IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHELLE LEE MULLINS | § | |
| | § | |
| VS. | § | ACTION NO. 4:04-CV-477-Y |
| | § | |
| JAMES R. CROUCH | § | |

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

Pending before the Court is Defendant's Motion for Judgment on the Pleadings. After consideration of all the documents filed regarding the motion and the applicable law, the Court concludes that the motion should be granted.

### I. Facts

Plaintiff Michelle Lee Mullins ("Mullins") brings this suit under 42 U.S.C. § 1983 against defendant James R. Crouch ("Crouch"), a police officer with the city of Arlington, Texas, in his individual capacity.[1] Plaintiff alleges that Crouch violated her constitutional rights by knowingly lying in affidavits supporting an arrest warrant against Mullins and a search warrant for her residence. Mullins also asserts various state-law claims against Crouch.

Crouch's affidavit in support of the search warrant accuses Mullins of engaging in theft by deception based upon the following facts:

July 29, 2001, Sgt. Crouch received an e-mail from Mr. Mike

---

[1] There is some confusion as to whether Mullins's complaint asserts claims against Crouch in his individual or official capacity. It is clear, however, from Mullins's response to Crouch's motion that she intended her complaint to assert claims against him in his individual capacity. See Pl.'s Resp. at 2.

Molnar in Vernon British Columbia, Canada, who stated that he felt that his mother, Cheryl Eckstein, was the victim of a possible on going [sic] scam. He stated that the person or persons perpetuating this scheme lived in Arlington. I called Mr. Molnar and he stated that he would send me copies of the e-mails that had been sent to his mother. The e-mails stated that a girl by the name of Alexis Marquis was the victim of incest and had a 3 month old child, Zachary. Pictures and story are posted on a legitimate web site, STIGMA, created for support of females that have been the victim of abuse, rape and incest.

A second complaint was received on the same day from Trudy Fuller of Corvallis, Oregon stating the same details.

The first correspondence was on or about June 21, 2001 with Cheryl Eckstein at The Compassionate Healthcare Network (CHN) in Surrey, British Columbia, Canada.

By July 8, 2001, [Alexis Marquis] had "moved in" with her sister in law, Michelle Mull[i]ns.

By July 20, 2001, Alexis stated that her and Michelle were going to move into a house on 10 acres, so the kids would have plenty of room, and gave the new address as 4621 S. Cooper Street #131-121.

This address is one of a mail box drop and her box number is #121, registered to Michelle Mullins with a home address of 829 Embercrest Dr., Arlington, Texas and was rented on July 20, 2001

Alexis enters Arlington Memorial Hospital and passes away on July 24, 2001

There is no record at Arlington Memorial Hospital or the Tarrant County Medical Examiners Office relating to death or existence of anyone named Alexis Marquis.

At this point, Michelle takes over the communications and a trust fund is set up for the baby Zachary, who she wants to adopt. Michelle explains that there was no posting in the newspapers or obituary concerning the death of Alexis Marquis because she was a private person and her wishes were honored by keeping her death qui[et]. Michelle describes the house that she occupies at 4621 So. Cooper #131-121 and keeps people updated as to the construction on a play area for the kids.

During the first part of August, Michelle starts feeling bad and has an MRI done and she informs people that the

> results are not good and asks for their prayers.
>
> Suspect has received gifts and unknown amount of monies from various locations for the support of her and baby Zachary, and a trust fund has been set up for future support. E-mail sites ask that gifts or donations be sent to Michelle at 4621 S. Cooper #131-121.
>
> Extensive investigations ha[ve] indicated that the persons held forth as Alexis Marquis with a birth date of April 1, 1986 is an identity created in order to perpetuate the fraud on unsuspecting innocent parties, designed to extract monies and gifts intended for their own use.

(Pl.'s Reply to Def.'s Original Answer, Ex. A.) Crouch's affidavit in support of the arrest warrant is virtually identical, but includes the following additional averments: (1) that the alleged MRI of Mullins was a fabrication; (2) that during the execution of the search warrant, Mullins was interviewed and admitted that she made up the entire story and had never been sick; (3) that the clothing and book that Eckstein had sent to Mullins was recovered at Mullins's home; and (4) that Eckstein spent approximately $133.42 in Canadian funds on these gifts. (Pl.'s Reply to Def.'s Original Answer, Ex. B at 2-3.)

Mullins's complaint alleges that the warrants contain false information because she never "set up a trust fund for the purpose of committing theft from Ms. Eckstein," and that prior to "Crouch obtaining the warrant[s], Mrs. Eckstein had informed him that [Mullins] had never solicited any gifts or monies from her." (Pl.'s Compl. at 3, ¶ 9.) Mullins also contends that Crouch "knew at the time the warrants were obtained [Mullins] had only received unsolicited items from Ms. Eckstein consisting of some baby clothes and a book." (Pl.'s Reply at 3.)

Mullins's complaint contends that Crouch has violated her constitutional rights. She does not identify the specific constitutional provision she claims was violated, but instead contends that she was denied her "clearly established rights under the United States Constitution to: (A) Freedom from unreasonable seizure of [her] person; (B) Freedom from deprivation of liberty and property without due process;[2] and] (C) Freedom from unreasonable searches and seizures." (Pl.'s Compl. at 4, ¶ 14.) Crouch's motion seeks judgment on the pleadings.

## II.  Standard

A. Judgment on the Pleadings

Rule 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A [r]ule 12(c) motion for judgment on the pleadings is designed to provide a means for disposing of cases when the material facts are not in dispute and a judgment on the merits can be attained by reference to the pleadings and to any facts of which the court may take judicial notice." *Chalmers v. Wilhelm*, No. 3:01-CV-0153-D, 2001 WL 1142706, at *1 (N.D. Tex. Sept. 25, 2001) (citing *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for

---

[2] Although not entirely clear, it appears that this allegation is intended to be a complaint about the fact that Mullins's "computer, peripherals and software" were seized during the search of her home and allegedly never returned. (Pl.'s Compl. at 3, ¶ 9.)

failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 528 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)). Consequently, when reviewing a motion for judgment on the pleadings, a court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994). Furthermore, the motion "should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint." *Johnson*, 385 F.3d at 528 (citing *Great Plains Trust*, 313 F.3d at 313). "Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain." *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998) (citing *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

B. Qualified Immunity

In this case, Crouch seeks judgment on the pleadings on the basis that he is entitled to qualified immunity. To the extent Mullins seeks money damages directly from Crouch for his actions taken under color of state law, Crouch may invoke his right to qualified immunity. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991). Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982). Because

an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When this Court is called upon to confer qualified immunity upon a government official accused of violating a federal constitutional or statutory right, the Fifth Circuit requires the Court first to employ a three-tiered inquiry. *See Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001). Initially, the Court must determine whether the complainant has actually alleged the violation of a federal constitutional or statutory right. *See id.; Wilson v. Layne*, 526 U.S. 603, 609 (1999). If the Court determines that he has, the Court must then decide whether, at the time of the alleged violation, that right was so clearly established that a reasonable government official in the defendant's situation would have understood that his conduct violated that right.[3] *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). No prior case directly on point need be extant but, again, the official must have been able to understand that what he did violated a federal right.

---

[3] This second prong of the three-tiered inquiry is often condensed into "objective reasonableness." Many cases, then, ask whether the accused government official's conduct was objectively reasonable. *See, e.g., Conroe Creosoting Co.*, 249 F.3d at 340. *Anderson* seems to supply the intermediate language between the full and the condensed expression of this second prong: "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635 (1987).

*See Anderson v. Creighton*, 483 U.S. at 640; *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995). Finally, the Court must "determine whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly established right." *See Conroe Creosoting Co.*, 249 F.3d at 340; *Morris v. Dearborne*, 181 F.3d 657, 666 (5th Cir. 1999).

### III.  Analysis

Before an officer may be stripped of his immunity from suit on the basis of a faulty search or arrest warrant, the plaintiff must first allege the violation of a constitutional right. Warrants must be supported by probable cause in order to satisfy the requirements of the Fourth Amendment. The Supreme Court has adopted a "totality of the circumstances" test in evaluating whether a warrant is supported by probable cause. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Bennett v. City of Grand Prairie*, 883 F.2d 400, 404 (5th Cir. 1989).

In the usual case, when a neutral magistrate issues a warrant, which he may do only after concluding that probable cause exists, a presumption is raised that it is reasonable for the officer to believe that there is probable cause.[4]  *See Golino v. City of New*

---

[4] The Court notes, once again, that the first step in performing a qualified-immunity analysis is always to determine whether the plaintiff has alleged a violation of a constitutional right. In some circumstances, such as in this case where the plaintiff is alleging that his constitutional right to be free from unreasonable searches and seizures has been violated, the first step of the qualified-immunity analysis involves a

*Haven*, 950 F.2d 864, 870 (2d Cir. 1991). The reasonableness of a warrant can be undermined, however, by a warrant application that contains material misstatements and omissions. *See Hale v. Fish*, 899 F.2d 390, 400-01 (5th Cir. 1990). In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court held that an officer is liable for swearing to false (or omitted) information in an affidavit for a search warrant if the affiant knew the information was false or would have known it was false but for the affiant's reckless disregard for the truth, and the warrant would not establish probable cause without the false information.

Mullins contends that Crouch knew that a trust fund had not been established for Zachary despite his affidavits' averments to the contrary. Mullins also contends that Crouch knew that she had not solicited any gifts or donations. The problem with Mullins's position, however, is that even if these statements in the affidavits are false, the Court concludes that the affidavits nevertheless establish probable cause to believe that Mullins engaged in theft without considering these allegedly false statements.

Under Texas law, "[a] persons commits an offense if he unlawfully appropriates property with intent to deprive the owner of the

---

reasonableness issue: Were the search and seizure unreasonable? The Supreme Court in *Anderson v. Creighton*, 483 U.S. 635, 636-37 (1987), and *Saucier v. Katz*, 533 U.S. 194, 197 (2001), has made clear that this analysis is not to be confused or combined with the second step of the qualified-immunity analysis, which also contains a reasonableness issue: Was the right to be free of illegal searches and seizures so clearly established that a reasonable officer in the defendant's situation would have understood that his conduct violated that right?

property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon 2003). The term "appropriate" means "to acquire or otherwise exercise control over property other than real property." *Id.* § 31.01(4)(b). The appropriation of property is unlawful if "it is without the owner's effective consent." *Id.* § 31.03(b). Consent is ineffective if it is "induced by deception." *Id.* § 31.01(3)(A). The term "deception" is defined as "creating or confirming by words or conduct a false impression of . . . fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." *Id.* § 31.01(1)(A).

Even if the averments that Mullins created a trust fund and received "unknown amount of monies" for her and baby Zachary's support are removed from the affidavits, the affidavits nevertheless establish probable cause to believe that Mullins engaged in theft. The affidavits clearly aver that Mullins appropriated other property in addition to the alleged monies, inasmuch as the affidavits allege that Mullins received gifts for both her and Zachary's support. Indeed, Mullins admits in her reply to Crouch's answer that she received baby clothes and a book from Eckstein. The fact that these items were not specifically solicited by Mullins does not absolve her under the statute, which only requires that Mullins "acquire or otherwise exercise control over" the property. *Id.* § 31.01(4)(B). Furthermore, the affidavits clearly allege facts suggesting that Mullins's acquisition of this property was without Eckstein's effective consent and was with the intent to deprive her of the property, given the allegations that Mullins fabricated the existence

of both Alexis Marquis and baby Zachary, the death of Marquis, the house and acreage, the construction of a playground there, and Mullins's MRI and illness.  Consequently, even upon ignoring the averments that Mullins contends are false, Crouch's affidavits establish probable cause to believe that Mullins engaged in theft under Texas law.  As a result, Mullins has failed to allege facts demonstrating a violation of her constitutional rights.

## IV.  Conclusion

For the foregoing reasons, Crouch's Motion for Judgment on the Pleadings [document number 18] is hereby GRANTED. Mullins shall take nothing by way of her constitutional claims against Crouch, and those claims are hereby DISMISSED WITH PREJUDICE to their refiling. Inasmuch as the federal claims have now been dismissed, the Court declines to exercise supplemental jurisdiction over Mullins state-law claims against Crouch.  *See* 28 U.S.C. § 1367(a)(3).

SIGNED April 28, 2005.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE